# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SULEIMAN GURE FARAH, ) | |
| ) | |
| Plaintiff, ) | No. 4:24-CV-728 JSD |
| ) | |
| v. ) | |
| ) | |
| ALEXANDRO MAYORKAS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 5), Plaintiff's Cross Motion for Summary Judgment (ECF No. 10), and Defendants' Motion to Dismiss Under Rule 12(B)(1) Mootness (ECF No. 15). For the reasons stated here, the Court grants Defendants' Motion to Dismiss.

## BACKGROUND

In 2013, Plaintiff Suleiman Gure Farah was admitted to the United States as a refugee. (Defendants' Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 7, ¶ 1)[1]

---

[1] Notably, Plaintiff did not respond to Defendants' Statement of Material Facts (ECF No. 7) and those facts are deemed admitted. *See* E.D.Mo. L.R. 4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party"); *Reasonover v. St. Louis Cnty., Mo.,* 447 F.3d 569, 579 (8th Cir. 2006) (district court did not abuse its discretion in deeming facts set forth in moving party's summary judgment motion admitted under E.D. Mo. L.R. 4.01(E) where no timely response was filed); *Ridpath v. Pederson,* 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material facts, it was deemed admitted under E.D. Mo. L.R. 4.01(E)); *Northwest Bank and Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 724-725 (8th Cir. 2003) (affirming district court that deemed admitted all statements of fact by party moving for summary judgment where non-movant failed to abide by local rule); *Curry v. Bi-State Dev.*, No. 4:23 CV 487 CDP, 2024 WL 4791928, at *1 (E.D. Mo. Nov. 14, 2024);

"The Immigration and Nationality Act (INA), 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq.*, sets out 'how persons are admitted to, and removed from, the United States.'" *Campos-Chaves v. Garland*, 602 U.S. 447, 451 (2024) (quoting *Pereida v. Wilkinson*, 592 U.S. 224, 227 (2021)). Plaintiff came to the United States as a refugee, or a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42). The INA also provides a method for children and spouses of refugees to gain admission into the United States: "A spouse or child (as defined in section 1101(b)(1)(A), (B), (C), (D), or (E) of this title) of any refugee who qualifies for admission under paragraph (1) shall, if not otherwise entitled to admission under paragraph (1) and if not a person described in the second sentence of section 1101(a)(42) of this title, be entitled to the same admission status as such refugee if accompanying, or following to join, such refugee and if the spouse or child is admissible (except as otherwise provided under paragraph (3)) as an immigrant under this chapter." 8 U.S.C. §1157(c)(2)(A). Under the Foreign Affair Manual ("FAM"), the "qualifying relationship", *see* 9 FAM 203.6-8, between the petitioner and the beneficiary—here, between Plaintiff and his children—"[m]ust exist on the date of the spouse or child's admission to the United States."

Plaintiff Suleiman Gure Farah filed I-730 Refugee Follow-to-Join Petitions on behalf of the following beneficiaries: his wife, Khadija Ali Hassan ("Khadija"), his son Sadaq Saleban

---

*O'Mara v. Scales Plumbing Co., LLC,* No. 4:18-CV-00096-SNLJ, 2018 WL 6248752, at *1 (E.D. Mo. Nov. 29, 2018) ("not only does it appear that plaintiffs are seeking summary judgment, but, pursuant to Local Rule 7-4.01(E), their unanswered statements are properly deemed admitted").

Gure ("Sadaqa"), his son Omar Faruq Selban Gure ("Omar Faruq"), his daughter Salado Saleban Gure ("Salado"), his son Abdimajid Saleban Gure ("Abdimajid"), and his daughter Khatumo Saleban Gure ("Khatumo") (collectively, "Beneficiaries"; Plaintiff's children are collectively referred to as "Children"). (Plaintiff's Statement of Uncontroverted Material Facts ("PSUMF"), ECF No. 11, ¶ 1; DSUMF, ¶ 2) On October 26, 2016, Defendant U.S. Citizenship & Immigration Services ("USCIS") approved the I-730 Refugee Follow-to-Join Petitions on behalf of the Beneficiaries. (PSUMF, ¶ 2) On September 7, 2017, the I-730 Beneficiaries completed Consular Interviews in Nairobi, Kenya, and the Beneficiaries continued to remain overseas. (PSUMF, ¶ 3; DSUMF, ¶ 3). On September 11, 2018, Defendant USCIS issued Notices of Deferred Decision on behalf of the I-730 Refugee Follow-to-Join Beneficiaries, stating that overseas processing of the I-730 Petitions was delayed for the completion of the background checks and medical clearance. (PSUMF, ¶ 4; DSUMF, ¶ 4) Between 2017-2022, Plaintiff Suleiman Gure Farah's then-attorney made inquiries regarding the status and progress of the I-730 Follow-to-Join Petitions. (PSUMF, ¶ 5) In 2021 or 2022, beneficiary Khadija passed away. (DSUMF, ¶ 5)

On May 23, 2024, Plaintiff Suleiman Gure Farah filed a Complaint for Writ of Mandamus and Other Relief (ECF No. 1). In his Complaint, Plaintiff sought relief under the Administrative Procedures Act ("APA") and the Mandamus Act to promptly adjudicate Plaintiff's I-730 Follow-to-Join Petitions on behalf of the Children. On May 30, 2024, Plaintiff Suleiman Gure Farah passed away. (PSUMF, ¶ 7; DSUMF, ¶ 7)

On July 25, 2024, Defendants filed a Motion for Summary Judgment, Memorandum in Support of Summary Judgment, and Statement of Material Facts. (ECF Nos. 5, 6, 7) On August 30, 2024, Plaintiff filed a Cross-Motion for Summary Judgment, Statement of Uncontroverted

Material Facts, and Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment. (ECF Nos. 10, 11, 12)

On September 19, 2024, Service Motions to Reopen and Notices of Intent to Deny (SMTR-NOID) were issued on each of the Plaintiff's conditionally approved Forms I-730 for the Children. (Defendants' Additional Statements of Facts ("DASOF"), ECF No. 13, ¶ 1) On the same day, a Notice of Denial for Abandonment was issued on the Form I-730 on behalf of the Plaintiff's deceased spouse. (DASOF, ¶ 2)

On September 20, 2024, Defendants filed their Response to Plaintiff's Cross-Statement of Material Facts and Defendants' Additional Statement of Facts (ECF No. 13), which incorporated the SMTR-NOID and Defendants' Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendants' Motion for Summary Judgment (ECF No. 14).

On December 6, 2024, the USCIS issued a Notice of Denial of the Children's Form I-730 Refugee/Asylee Relative Petitions. (ECF No. 16-1)

On December 20, 2024, Defendants filed their Motion to Dismiss for Lack of Jurisdiction and Memorandum of Law in Support of Motion to Dismiss for Lack of Jurisdiction. (ECF Nos. 15, 16) To date, Plaintiff has not responded to Defendants' Motion to Dismiss for Lack of Jurisdiction and the time for Plaintiff to file a response has run. *See* E.D.Mo. L.R. 4.01(B).

Thus, Defendants' Motion for Summary Judgment (ECF No. 5), Plaintiff's Cross Motion for Summary Judgment (ECF No. 10), and Defendant's Motion to Dismiss Under Rule 12(B)(1) Mootness (ECF No. 15) are all ready for disposition. Because it is dispositive, the Court addresses Defendants' Motion to Dismiss first.

# DISCUSSION

## I.  DEFENDANTS' MOTION TO DISMISS (ECF No. 15)

### 1.  Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if it lacks jurisdiction. *See* Fed. R. Civ. P. 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction"); 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). When considering a Rule 12(b)(1) motion, a court may consider matters outside the pleadings because the court has "'substantial authority ... to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Osborn v. United States,* 918 F.2d 724, 730 (8th Cir.1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)); *Morse v. Cnty. of Ozark, Mo.*, No. 14-03348-CV-S-GAF, 2014 WL 5438388, at *1 (W.D. Mo. Oct. 24, 2014), *aff'd sub nom. Morse v. Ozark Cnty., Mo.*, 609 F. App'x 359 (8th Cir. 2015); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729, n.6 (internal citation removed). That is, in deciding a factual challenge to subject matter jurisdiction, the court

need not view the evidence in the light most favorable to the non-moving party. *See Osborn*, 918 F.2d at 729, n.6, 730.

    **2.  No Article III Standing**

"Article III of the Constitution limits the judicial power of the United States to the resolution of Cases and Controversies, and Article III standing enforces the Constitution's case-or-controversy requirement." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (citation, internal quotation marks, and alteration omitted). A plaintiff must have "such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (citation and internal quotation marks omitted). In other words, the standing requirement ensures that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If a plaintiff lacks standing to pursue a claim, then the court has no subject matter jurisdiction. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). Thus, "a standing argument implicates Rule 12(b)(1)." *Id.*

The Court dismisses this lawsuit because named Plaintiff is deceased and, therefore, lacks Article III standing. "Rule 17(a) requires that an action be prosecuted 'in the name of the real party in interest,' Fed. R. Civ. P. 17(a)(1) – the person 'who, according to the governing substantive law, is entitled to enforce the right' in question, 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1543 (3d ed.)." *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 786 (4th Cir. 2019). That is, "[a]bsent a plaintiff with legal existence, there can be no Article III case or controversy." *Id.*, at 787; *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 16-CV-2518, 2018 WL 11422637, at *1 (D. Minn. Nov. 28, 2018)

("[t]his Court has repeatedly held that the dead cannot invoke federal jurisdiction."); *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) ("There is no plaintiff with standing if there is no plaintiff."). Thus, the Court dismisses this action because the named Plaintiff lacks standing.

Further, the Court holds that it lacks subject matter jurisdiction over this lawsuit because all the requested relief has been provided and, therefore, the lawsuit is moot. In the Complaint, Plaintiff requests that this Court issue an order that "requires Defendants to promptly adjudicate Plaintiff's Refugee Follow-to-Join petitions"; "[i]ssue a writ of mandamus, pursuant to 28 U.S.C. §§ 1361 and 1651, directing Defendants to promptly adjudicate Plaintiff Suleiman Gure FARAH's remaining Follow-to-Join petitions"; and "[r]etain jurisdiction over this action and any attendant proceedings until Defendants have in fact adjudicated Plaintiff Suleiman Gure FARAH's Refugee Follow-to-Join applications, and have communicated the results of such adjudication to Suleiman and the Court". (Complaint, ECF No. 1, Prayer for Relief) Likewise, in Plaintiff's Cross-Motion for Summary Judgment, he asks for Defendants to adjudicate the Children's I-730 Follow-to-Join Petitions pursuant to the APA and Mandamus Act. (ECF Nos. 10-11, *passim*) Notably, Plaintiff does not ask the Court to order the discretionary relief that the I-730 Petitions be approved, but simply the ministerial act of adjudication of their Petitions. *Id*. Importantly, on December 6, 2024, the USCIS issued a Notice of Denial of the Children's Form I-730 Refugee/Asylee Relative Petitions, fully adjudicating these Petitions. (ECF No. 16-1) Thus, Plaintiff's claims based on the APA and Mandamus Act have been mooted and there remains no justiciable claim. The Court grants Defendants' Motion to Dismiss (ECF No. 15) with prejudice.

## II. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Although it dismisses this action on Defendants' Motion to Dismiss, the Court addresses Plaintiff's Motion for Summary Judgment, finding it also provides no basis for relief.

### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

The standard for review under the APA and Mandamus Act is well-established:

> Under the Administrative Procedure Act, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ... is entitled to judicial review thereof," 5 U.S.C. § 702, and "[t]he reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706. Thus, the Act provides "limited authority ... to review whether agency action has been 'unlawfully withheld or unreasonably delayed' ...." *Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 461–62 (8th Cir. 2018) (quoting 5 U.S.C. § 706). Though "an agency's mere failure to act is usually not a final agency action triggering judicial review," *id.* at 462, "a claim under § 706(1) should be reviewed as a petition for a writ of mandamus," *id.* (citing *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)).
>
> Similarly, under the Mandamus Act, federal courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The standard for undue delay under the Mandamus Act ... is identical to the APA standard." *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (citing *Norton*, 542 U.S. at 63–64); *see Mohammad v. Blinken*, 548 F. Supp. 3d 159, 164–65 (D.D.C. 2021) (quoting *Kangarloo*, 480 F. Supp. 3d at 142).

*Wilkes v. Blinken*, No. 4:21-CV-01148-SRC, 2022 WL 1288402, at *4 (E.D. Mo. Apr. 29, 2022).

**B. Discussion**

**1. Mandamus Act**

Initially, Plaintiff claims that he is entitled to mandamus relief for his children as part of their I-730 Follow to Join Petitions. Plaintiff states that the relevant statute and the FAM provisions are unambiguous: 8 U.S.C. § 1157(c)(2)(A) ("A spouse or child (as defined in section 1101(b)(1)(A), (B), (C), (D), or (E) of this title) of any refugee who qualifies for admission under paragraph (1) shall, if not otherwise entitled to admission under paragraph (1) and if not a person

described in the second sentence of section 1101(a)(42) of this title, be entitled to the same admission status as such refugee if accompanying, or following to join, such refugee and if the spouse or child is admissible (except as otherwise provided under paragraph (3)) as an immigrant under this chapter."); 8 C.F.R. § 207.7a. Plaintiff notes that the Children's I-730 Follow-to-Join Petitions have languished for seven (7) years since the date of the Children's consular interviews on September 7, 2027. Although the Children were issued Notices of Deferred Decision on September 11, 2018, Plaintiff puts forth that Defendants have not advanced beneficiary processing to complete the background checks for the Children nor scheduled medical examinations for the Children. Plaintiff contends that he has a right to adjudication of the pending I-730 Follow-to-Join Petitions.

Further, Plaintiff claims that Defendants have a clear duty to complete the adjudication of Plaintiff's Children's I-730 Follow-to-Join Petitions. Plaintiff emphasizes that, while the outcome of the Follow-to-Join Petitions is discretionary, the duty to timely complete the process the applications is ministerial and mandatory. (ECF No. 12 at 6-7) Plaintiff states Executive Order 14013, which provides "Sec. 5. Improving Performance. (a) The Secretary of State, in consultation with the Attorney General and the Secretary of Homeland Security, shall develop and ensure adherence to a plan that addresses USRAP [U.S. Refugee Admissions Program] processing backlogs. … (b) The plan and review described in subsection (a) of this section shall also: … (ii) seek to bring national average processing times within the period described in 8 U.S.C. § 1571(b)." (ECF No. 12 at 7) In turn, 8 U.S.C. § 1571(b) advises: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Plaintiff argues that Defendants are at eighteen times (18x) the benchmark processing times advised by the Administration and those

which have been deemed unreasonable by other courts. (ECF No. 12 at 7 (citing *Doe v. Risch*, 398 F.Supp. 3d 647, 659 (N.D. Cal. 2019) (Two and a half year delay deemed unreasonable); *Salihi v. Blinken*, No. 23-CV-718-MMA-AHG, 2023 WL 8007348, at *7 (S.D. Cal. Nov. 17, 2023) (denying motion to dismiss because "six-year delay[] asserted here is plausibly unreasonable").

Finally, Plaintiff claims that no other adequate remedy exists, other than completing processing and adjudicating his I-730 Follow-to-Join Petitions. (ECF No. 12 at 7-8) As there are no material disputes and no adequate remedy available, Plaintiff states that he is entitled to relief under the Mandamus Act.

### 2. Administrative Procedures Act

The APA requires that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and that "[t]he reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

Plaintiff contends that Defendants have failed to comply with the 180-day statutorily imposed deadline in 8 U.S.C. § 1571(b), "and is re-emphasized in Presidential Executive Order 14013 at Sec. 5(b)." (ECF No. 12 at 8) Plaintiff claims that Defendants have a non-discretionary, ministerial duty, codified in 8 U.S.C. § 1571(c)(2)(A) and 8 C.F.R. § 207.7(a), to adjudicate Plaintiff's I-730 Follow-to-Join Petitions on behalf of his Children. (ECF No. 12 at 9) Plaintiff notes that the only remaining outstanding items since the Children's consular interviews are the ministerial tasks of (1) ordering background checks and (2) scheduling medical examination for

the Children, who were all (except one) younger than 18 at the time of the consular interviews. (ECF No. 12 at 9-10) Plaintiff emphasizes that Defendants have not indicated that the background checks of these then-minor children were complex or time-consuming or if Defendants have even initiated the process. (ECF No. 12 at 10)

Finally, Plaintiff claims that Defendants have unreasonably delayed acting on their non-discretionary duty to perform their agency action. Plaintiff asks this Court to apply the factors from *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC Factors"):

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80. Applying these factors, Plaintiff asks the Court to find that a more than six-year delay is unreasonable, particularly where Congress anticipated a 180-day timetable. Plaintiff emphasizes the humanitarian factors, particularly the separation of Plaintiff and his wife Khadija

during the final years of their lives and the Children, now adults, growing up without their father. (ECF No. 12 at 13-14) Finally, Plaintiff claims that, "[a]fter nine years of dilatory action, justice and fundamental fairness demand that this Court order Defendants to adjudicate Plaintiff's I-730 Refugee Follow-to-Join petitions *Nunc Pro Tunc*, grant *Humanitarian Reinstatement*, or such other discretionary relief that this Court deems just and proper." (ECF No. 12 at 15 (emphasis in original)). In the alternative, if the Court denies Plaintiff's Motion for Summary Judgment, Plaintiff asks that this Court also deny Defendants' Motion for Summary judgment and order discovery regarding unreasonable delay. *Id*.

### 3. Denial of Plaintiff's Cross-Motion for Summary Judgment

The Court denies Plaintiff's Cross-Motion for Summary Judgment. Initially, the Court reiterates that Plaintiff's Motion must be denied because his death extinguishes any possible basis for relief. Although the Court sympathizes with the Children's significant loss, the Court does not have Article III subject-matter jurisdiction because the sole named Plaintiff is deceased and the claims are moot. *See* Fed. R. Civ. P. 12(b)(1); 12(h)(3). As previously discussed with respect to Defendants' Motion to Dismiss and because Plaintiff does not address this issue, the Court must deny his Motion for Summary Judgment and dismiss this action for lack of subject matter jurisdiction.

In addition, the Court denies Plaintiff's Cross-Motion for Summary Judgment because Plaintiff is ineligible for the requested relief. Here, Plaintiff, a refugee, filed I-730 Follow-to-Join Petitions for his Children to join based upon his qualifying relationship with them. Typically, death extinguishes this qualifying relationship. The Court must deny Plaintiff's Motion for Summary Judgment because he does not address Defendants' arguments that the Children are ineligible for admission after Plaintiff's death because a familial relationship between petitioner

and beneficiary is required "on the date of . . . the child's admission to the United States." 9 FAM 203.6-8(a)(4) (emphasis added); accord 8 C.F.R. § 207.7(c) ("The relationship of a spouse and child … must continue to exist … at the time of the spouse or child's subsequent admission to the United States.").

The Court recognizes that Congress created an exception for surviving relatives (including beneficiaries of Form I-730) in the event of a petitioner's death if the beneficiary lives in the United States at the time of the petitioner's death:

> **(l)Surviving relative consideration for certain petitions and applications**
>
> **(1)In general**
>
> An alien described in paragraph (2) *who resided in the United States at the time of the death of the qualifying relative and who continues to reside in the United States* shall have such petition described in paragraph (2), or an application for adjustment of status to that of a person admitted for lawful permanent residence based upon the family relationship described in paragraph (2), and any related applications, adjudicated notwithstanding the death of the qualifying relative, unless the Secretary of Homeland Security determines, in the unreviewable discretion of the Secretary, that approval would not be in the public interest.
>
> **(2)Alien described**
>
> An alien described in this paragraph is an alien who, immediately prior to the death of his or her qualifying relative, was--
>
> \*\*\*
>
> **(D)** the beneficiary of a pending or approved refugee/asylee relative petition under section 1157 or 1158 of this title;

8 U.S.C. §§ 1154(l)(1), (l)(2)(D) (emphasis added). Plaintiff's Children, however, are ineligible for survivor benefits under Section 1154(l) because they were not in the United States at the time of Plaintiff's death.

In summary, Plaintiff's overseas Children are ineligible for admission as a Follow-to-Join beneficiaries because there is no longer a qualifying relationship nor are they eligible for the exception for survivor's benefits under 8 U.S.C. § 1154(l). Indeed, Plaintiff makes no mention of 8 U.S.C. § 1154(l), 8 C.F.R. § 207.7(c), or 9 FAM 203.6-8(a)(4) or any basis for this admission to the United States now that the Plaintiff is deceased and the Children do not reside in the United States. *See* 8 U.S.C. 1154 §§ (l)(1), (l)(2)(D) (allowing for adjudication of a pending I-730 petition when the beneficiaries "reside in the United States at the time of the death of the qualifying relative and who continue to reside in the United States.").

Further, Plaintiff claims that he seeks only adjudication of the Children's Follow-to-Join Petitions. The Form I-730 for Plaintiff's deceased spouse has been denied for abandonment under 8 C.F.R. 103.2(b)(13)(i) and the Form I-730 for the Children have been issued SMTR-NOIDs because Petitioner died and beneficiary Children reside abroad. At the conclusion of time to respond to the SMTR-NOID, the Form I-730 was denied. (ECF No. 16-1 (Denials for Children); *see* 9 FAM 203.6-2(e)(1) ("A beneficiary is ineligible for Form I-730 benefits if the petitioner dies before the beneficiary's arrival to the United States."); *cf.* 8 U.S.C. § 1154(l)(1) ("An alien described in paragraph (2) who resided in the United States at the time of the death of the qualifying relative and who continues to reside in the United States shall have such petition described in paragraph (2), or an application for adjustment of status to that of a person admitted for lawful permanent residence based upon the family relationship described in paragraph (2), and any related applications, adjudicated notwithstanding the death of the qualifying relative, unless the Secretary of Homeland Security determines, in the unreviewable discretion of the Secretary, that approval would not be in the public interest.").

Finally, the Court cannot grant relief to Plaintiff's Children based "on equity alone" under the Mandamus Act or the APA. *See Palis v. Mayorkas*, No. 19-CV-06729, 2022 WL 767227, at *7 (N.D. Ill. Mar. 14, 2022) (Where Plaintiff Dina Palis challenged Defendants' denial of her naturalization application under the Immigration and Nationality Act (INA) and the Administrative Procedure Act (APA), the Court denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment because Plaintiff failed to meet all statutory requirements for naturalization).

Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory ... authority, or limitations, or short of statutory right." *Kansas v. United States*, No. 1:24-CV-00150, 2024 WL 5220178, at *7 (D.N.D. Dec. 9, 2024) (quoting 5 U.S.C. § 706(2)(A), (C)). "An agency has acted in excess of statutory authority when it 'has gone beyond what Congress has permitted it to do' either by assuming authority it does not have or by exercising the authority it does have in an impermissible way. *Kansas*, 2024 WL 5220178, at *7 (*City of Arlington v. FCC*, 569 U.S. 290, 297 (2013)). To the contrary, Defendants' actions in denying Plaintiff's I-730 Follow-to-Join Petitions are just and in accordance with their statutory authority. *See Palis*, 2022 WL 767227, at *7. The death of the Plaintiff requires denial of any beneficiary petitions and an equity argument cannot save Plaintiff's failed petitions. *See* 9 FAM 203.6-2(e)(1) (death of petitioner required case to be denied). For all these reasons, the Court denies Plaintiff's Cross-Motion for Summary Judgment.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Under Rule 12(B)(1) Mootness (ECF No. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 5) is **DENIED** as moot.

**IT IS FINALLY ORDERED** that Plaintiff's Cross Motion for Summary Judgment (ECF No. 10) is **DENIED**.

An appropriate Judgment is filed herewith.

Dated this 15th day of January, 2025.

                                                     **JOSEPH S. DUEKER**
                                                     **UNITED STATES MAGISTRATE JUDGE**